IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN RAYMOND WILKERSON,   *
      Plaintiff,
 v.         * CIVIL ACTION NO. JFM-09-954

SHERIFF CHARLES JENKINS, et al.,  *
      Defendants.  *
          *****

## MEMORANDUM

Plaintiff filed this civil rights action on April 15, 2009, seeking damages against Frederick County Detention Center and its employees, alleging that he was required to work on the Sabbath and when he refused he "was then fired, and quit." He further alleges he was not permitted to where his Yamulke to go to the medical department or when attending programming. Plaintiff states he was threatened by correctional staff that if he wore his Yamulke off the cellblock it would be confiscated and destroyed and he would be tazed for resisting. Plaintiff also alleges he "tried to have [his] religious materials sent to [him]. After several tries they finally accepted them." Lastly, he states that correctional employees opened his legal mail outside of his presence. Paper Nos. 1 and 3.

On September 4, 2009, defendants filed a motion to dismiss, or in the alternative, motion for summary judgment. Paper No. 11. Plaintiff has filed an opposition thereto. Paper No. 15. Defendants have replied. Paper No. 16. Defendants' motions shall be granted without oral argument. *See* Local Rule 105.6. (D. Md. 2009).

### 1. Standard of review

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## 2. Analysis

### A.     Respondeat Superior

Plaintiff's allegation against Warden Jenkins is based solely upon the doctrine of *respondeat superior*.  It is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability

2

under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Jenkins that resulted in a constitutional injury.  Accordingly, plaintiff's claims against Warden Jenkins shall be dismissed.

**B.**     **Failure to Exhaust Administrative Remedies**

The court must examine the remaining defendants' assertion that the case should be dismissed in its entirety due to plaintiff's failure to exhaust available administrative remedies.  The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the

language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations. His claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The Assistant Director of Inmate Services, Randy Lee Martin, avers that plaintiff has filed no grievances or complaints concerning statements or conduct of defendants. Paper No. 11, Ex. A. Detention Center records reveal thirteen inmate request forms and one inmate grievance form filed by plaintiff. The only form concerning plaintiff's religious practices is an inmate grievance form

filed on May 1, 2009, well after the filing of the instant complaint, concerning the receipt of plaintiff's religious materials. *Id*. The form indicates that plaintiff's complaint was investigated, he had already received all the materials he was entitled to, and that on May 13, 2009, he was transferred from the detention center, mooting any further complaint. *Id*.

Plaintiff avers that he filed two inmate grievance forms that defendants have never acknowledged. The first form states that he was told he would have to work on the Sabbath. He advised Lt. Morrison that he could not work on the Sabbath and Morrison asked him when the Sabbath started. Paper No. 3, Ex. C. The second form indicates that on March 28, 2009, he was called to medical and was told to remove his "yamaka" before he went to his medical appointment. Plaintiff refused to attend his medical appointment or his anger management program because he refused to remove his yarmulke. *Id*., Ex. D.

The court cannot say on the record before it that plaintiff did not attempt to pursue his administrative remedies as to his claims regarding work on the Sabbath and yarmulke when leaving his cellblock. Defendants deny receiving the grievance forms and note that the forms are not signed by any correctional employee. Plaintiff avers he submitted them and they were ignored. The record is clear, however, that none of plaintiff's other claims regarding harassment, opening of mail, etc., have been exhausted. As such, the court will only consider plaintiff's claims concerning work on the Sabbath and wearing of the Yarmulke.

C.    **Constitutional Claims**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates

retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  That retained right is not unfettered.  Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution.  *See Turner v. Safely*, 482 U.S. 78, 89– 91 (1987).  The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question.  In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA).  The act provides in part that:

> [n]o government  shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

Defendants have presented considerable evidence in support of the current practice not to permit the wearing of any religious head coverings off of the housing unit.  Paper No. 11, Ex. A. The dress code in place at the time of plaintiff's incarceration provided as follows:

> The only head wear that is approved to be worn inside the Detention Center is religious head wear.  The religious head wear will only be worn while inside the housing units or at religious services inside the classrooms.  At no time will the religious head wear be worn in the hallways, at recreation or any other type of program ( i.e., library, AA, NA, etc.).

6

*Id.*, Ex. A-2.1

The restriction on the wearing of head coverings is an effort to prevent gang-related violence. The administrators of the detention center have found that gang members have used head coverings to identify other gang members. *Id.* There is no requirement for accommodation of religious observances to take precedence over institutional security concerns. *See Cutter v. Wilkinson*, 544 U.S. 706, 722-723 (2005). The rules regarding head coverings are neutral in religious requirements, and are the least restrictive means available to advance the compelling interest in avoiding gang related activity and securing the institution. *See e.g., Reimann v. Murphy,* 897 F.Supp. 398, 402-403 (E.D.Wis.1995) (exclusion of racist literature advocating violence is least restrictive means of furthering the compelling state interest in preventing prison violence); *George v. Sullivan,* 896 F.Supp. 895, 898 (W.D.Wis.1995) (same). Accordingly, defendants are entitled to summary judgment on plaintiff's claim concerning the failure to allow him to wear his yarmulke outside of his housing unit.

Plaintiff's claim concerning his work assignment also fails. The undisputed record reveals that plaintiff stopped work as a sanitation worker on Friday, March 27, 2009, but on the same date he began work in the Detention Center kitchen on the 11:00 a.m. to 6:00 p.m. shift. *Id.,* Ex. A-3, A-4, and A-5. Such work assignment did not interfere with plaintiff's observance of the Sabbath. Plaintiff's bald allegations to the contrary are unavailing.

Having determined that defendants are entitled to summary judgment on the claims presented, the motion shall be granted and judgment entered in their favor by separate order which

---

1 Plaintiff has provided a page of the inmate handbook that is not the handbook that was in effect during his incarceration at the Frederick County Detention Center. Paper No. 1, Attachment.

follows.


__January 27, 2010___                    _____/s/_____
Date                                      J. Frederick Motz
                                          United States District Judge